## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRIAN LEE WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. CIV-08-859-HE |
| | ) | |
| PAUL KASTNER, | ) | |
| | ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Petitioner is a federal prisoner currently in the custody of the Bureau of Prisons (BOP) at the Federal Transfer Center in Oklahoma City, Oklahoma (FTC-OKC). Appearing *pro se*, Petitioner brings this action pursuant to 28 U.S.C. § 2241 seeking federal habeas corpus relief. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent Paul Kastner, the Warden of FTC-OKC, has responded [Doc. #14], and Petitioner has replied [Doc. #16]. It is recommended that the Petition for Writ of Habeas Corpus be denied.

### **I.     Background**

Petitioner has been continuously incarcerated since 1999 as a result of both state and federal convictions. On October 29, 1999, Petitioner was placed in the custody of the Oklahoma Department of Corrections (ODOC) to begin serving consecutive sentences totaling 25 years. Four months later on February 16, 2000, Petitioner was indicted by a federal grand jury and charged with mail fraud. Petitioner pled guilty to the federal charges on August 8, 2000, and was sentenced to a 42-month term of imprisonment. He was then

immediately returned to the custody of the ODOC to finish serving his state sentences. Petitioner states that while he was serving his state sentences, he received numerous disciplinary reports for use of illegal substances. Petition at 1. On July 17, 2007, Petitioner discharged his state sentences and was transferred to the custody of the United States Marshal Service.

On October 5, 2007, Petitioner was transferred to FTC-OKC as the designated facility for service of his federal sentence. *See* Response Exhibit 1. According to the Declaration Under Penalty of Perjury of Dr. Y. Tami Yañez, who at that time managed the drug abuse treatment program at FTC-OKC, Petitioner did not report any history of substance abuse or express any interest in participating in any of the BOP's drug programs during his psychological intake screening conducted on October 12, 2007. Response Exhibit 2, Declaration of Dr. Y. Tami Yañez [Doc. #14-3] at 3.

Later, however, Petitioner expressed interest in participating in the Residential Drug Abuse Program (RDAP), and on March 26, 2008, Dr. Yañez conducted a structured interview to determine his eligibility, as required by the relevant regulations and program statement. Declaration at 4; *see also* Petition Exhibit 14. The interview form focused the inquiries on drug use in the "last period of 12 consecutive months on the street." Petition Exhibit 14 at 2, 4. Shortly thereafter, in an amended version of the structured interview, Dr. Yañez inquired about Petitioner's drug abuse history during the twelve-month period immediately preceding his BOP custody -- while he was in state custody. Declaration at 4; Petition Exhibit 15. According to Dr. Yañez, Petitioner's account of his substance use

suggested that Petitioner met the diagnostic criteria for cannabis, amphetamine and sedative abuse while he was incarcerated by the ODOC, but his account did not support a diagnosis of substance abuse prior to his incarceration. *Id.* She noted that Petitioner's account of his drug use was "inconsistent with his statements in the Pre-Sentence Investigation Report, wherein he stated he experimented with alcohol on one occasion and no history of drug use." *Id.* Further, Dr. Yañez reviewed the available documentation during the period of his incarceration in the custody of ODOC, and despite some references to drug use and one clinical note referencing a "severe drug abuse problem," Dr. Yañez determined that the diagnosis was not clinically substantiated. *Id.* at 4-5. Therefore, Dr. Yañez concluded that Petitioner does not meet the eligibility requirements for the RDAP but that he is eligible for the BOP's non-residential drug abuse treatment program. *Id.* at 5. Dr. Yañez explained that participation in the non-residential program "enables psychology staff an opportunity to further observe and examine the inmates regarding the extent of their substance dependency program and formulate an appropriate treatment plan, which may but may not include the more extensive residential drug abuse treatment program." *Id.*

Plaintiff states that he is currently enrolled in the non-residential drug abuse program. Petition at 4 ¶ 14.

**II.   Issues Presented**

Petitioner seeks an order from this Court directing Respondent to reconsider Petitioner's eligibility to participate in the RDAP. Petitioner contends that the BOP abused its discretion by basing the eligibility determination on the twelve-month period before

incarceration and requiring documentation of drug abuse during that time period. Petitioner also contends that the BOP's focus on the twelve-month period prior to incarceration is impermissibly based upon a memorandum dated October 21, 1996, from Beth Weinman, then a Regional Drug Abuse Program Coordinator.[1] Petitioner contends that the BOP's focus on the twelve-month period before incarceration is arbitrary and an abuse of discretion because neither the regulations nor the relevant Program Statement specify which twelve-month period should be considered in determining whether an inmate has a verifiable documented history of drug abuse.

## III.   Analysis

### A.   Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. *See* 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. §

---

[1] *See Mitchell v. Andrews*, 235 F. Supp.2d 1085, 1089 (E.D. Cal. 2001) (identifying author of the memorandum requiring substance abuse/dependence during the last 12 months before incarceration).

3621(e)(5)(B)(i) and (ii).  As an incentive for the successful completion of the RDAP, the BOP may, in its discretion, reduce the sentence of an inmate who has successfully completed the RDAP by up to one year.  *See* 18 U.S.C. § 3621(e)(2); *see also Lopez v. Davis*, 531 U.S. 230 (2001).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement set forth in § 3621.  To be considered eligible for the RDAP, an inmate must have a verifiable documented drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility and must ordinarily be within thirty-six months of release.  Additionally, the security level of the residential program institution must be appropriate for the inmate.  28 C.F.R. § 550.56(a).  Participation in the program is voluntary, and decisions on placement are made by a drug abuse treatment coordinator.  28 C.F.R. § 550.56(b).

The application of § 550.56 is set forth in Program Statement ("PS") 5330.10, which states in relevant part:

> **Eligibility.  An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**
>
> **(1) The inmate must have a verifiable documented drug abuse problem.**  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Program Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of the Mental Disorders*,

5

>Fourth Edition, (DSM-IV). This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
>Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate *used* the *same substance*, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.
>
>When a positive urinalysis in the institution is the only documentation of substance abuse, the inmate shall be referred to drug education or non-residential treatment. While in drug education and/or non-residential drug abuse treatment services, the inmate shall be further observed and examined regarding his/her substance use problem. If counseling indicates the need for more intensive treatment, the inmate may subsequently be referred to a residential drug program.

PS 5330.10, Ch. 5, § 5.4.1, page 3-4 (emphasis in original).

The DSM-IV is a manual published by the American Psychiatric Association. It "defines Substance Abuse or Substance Dependence as a cluster of certain listed symptoms in the same twelve-month period." *Rosenfeld v. Samuels*, 2008 WL 819630 at *2 (D. N.J. Mar. 26, 2008). The DSM-IV defines "Early Remission" as the first twelve-month period following Dependence or Abuse. The DSM-IV provides, however, that the signs of Early Remission do not apply if the individual is in a "controlled environment." Examples of a "controlled environment" include "closely supervised and substance-free jails, therapeutic communities, or locked hospital units." DSM-IV at 175-183.

In determining whether an inmate is eligible for the RDAP, the BOP has instituted a practice of examining the inmate's central file to determine if documentation exists to support a claim of substance abuse or dependence during the twelve-month period

immediately preceding the prisoner's incarceration. According to Dr. Yañez, the BOP looks at the twelve-month period before incarceration because "incarceration is an artificial environment, unlike the community[.]" Response Exhibit 2 at 3. In this case, however, Petitioner's central file does not include documentation of substance abuse during the twelve months preceding Petitioner's incarceration in 1999. Rather, Petitioner has produced some documentation indicating that he developed a substance abuse problem while he was incarcerated in the custody of the ODOC.

### B.      Petitioner's Challenge to the BOP's Practice

Petitioner challenges the BOP's denial of his request to participate in the RDAP based on lack of documented drug abuse during the twelve-month period before his incarceration. Petitioner contends that the BOP's decision to look at the twelve-month period before incarceration "is procedurally improper under the Administrative Procedure Act" because the regulations do not specify which twelve-month period should be considered. He further contends that the BOP's choice of the twelve-month period is an unreasonable interpretation of the statute. Petition at 10.

The standards set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), govern a court's review of an agency's regulations construing a statute.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of

>Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-43 (footnotes omitted).

The Supreme Court has stated that deference is given to the BOP even when "the Bureau's interpretation [of a statute] appears only in a Program Statemen[t] – an internal guideline – rather than in published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment." *Reno v. Koray*, 515 U.S. 50, 61 (1995) (internal quotation marks and citation omitted) (alterations in original). The Supreme Court reasoned that the BOP's Program Statement, which constitutes "an internal agency guideline, . . . is akin to an interpretive rule that do[es] not require notice and comment, . . . [and thus,] is . . . entitled to some deference . . . , since it is a permissible construction of the statute." *Id.* (internal quotation marks and citations omitted).

In *Lopez v. Davis*, 531 U.S. 230 (2001), the Supreme Court upheld a related BOP regulation interpreting the phrase "nonviolent offense" and categorically excluding certain types of prisoners from participation in the early-release program.

>Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so. In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the

statutory gap "in a way that is reasonable in light of the legislature's revealed design."

*Lopez*, 531 U.S. at 242 (citations omitted).

Similarly, here, Congress has not spoken to the precise question at issue but has left the process of identifying which prisoners have substance abuse problems to the discretion of the BOP. It was reasonable for the BOP to consult and rely on the DSM-IV criteria to identify prisoners who have a substance abuse problem. Because the DSM-IV dictates that diagnosis of substance abuse is dependent upon the existence of certain symptoms during a twelve-month period and that remission is dependent upon the absence of those symptoms for a twelve-month period unless the subject is in a "controlled environment," it is reasonable for the BOP to look to the twelve-month period before a prisoner is incarcerated to determine whether the prisoner exhibited the symptoms signaling drug abuse. Moreover, because of the sentence-reduction incentive, it is reasonable for the BOP to review the PSI and central file for documentation corroborating a prisoner's self-report of substance abuse. Thus, the challenged policy and practice of the BOP is a reasonable interpretation of the statute, as most courts who have considered the issue agree.

In cases that are factually analogous to the instant case, courts have found that the standards set by the BOP for eligibility constitute a permissible and reasonable exercise of the BOP's statutory discretion. *See Dellarcirprete v. Gutierrez*, 479 F. Supp.2d 600, 604-06 (N.D. W. Va. 2007); *Rea v. Sniezek*, No. 4:06 CV 2424, 2007 WL 427038, at *4-5 (N.D. Ohio Feb. 2, 2007); *Shew v. FCI Beckley*, No. 5:05-0814, 2006 WL 3456691, at *4 (S.D. W.

9

Va. Sept. 19, 2006); *Montilla v. Nash*, No. CIV A 05-2474(FLW), 2006 WL 1806414, at *3 (D.N.J. June 28, 2006); *Batiste v. Menifee*, No. CIV A 06-0657, 2006 WL 2078186, at *5 (W.D. La. June 16, 2006); *Conrod v. Sanders*, No. 2:05-CV-1915, 2006 WL 1789554, at *3 (W.D. La. May 16, 2006); *Quintana v. Bauknecht*, No. 3:05 CV 359/LAC/EMT, 2006 WL 1174353, at *4 (N.D. Fla. May 2, 2006); *Calhoun v. Warden, F. C.I. Texarkana*, No. 5:05CV198, 2006 WL 887677, at *6 (E.D. Tex.), aff'd, 224 Fed. Appx. 333 (5th Cir. 2007); *Laws v. Barron*, 348 F. Supp.2d 795, 804-06 (E.D. Ky. 2004).  These courts determined that even though none of the provisions in the statute, regulation or program statement require documentation of symptoms during the twelve-month period prior to incarceration, that period is reasonable, given the definitions of substance abuse and remission in the DSM-IV. Moreover, the same criteria are applied uniformly nationwide to all inmates seeking entry into the RDAP, and the requirements set by the BOP are based upon the "Bureau's long experience in running RDAP and other drug programs." *Laws*, 348 F. Supp.2d at 805; *see also Rea*, 2007 WL 427038, at *5.  Thus, the courts held that the BOP's interpretation is not arbitrary and neither violates any statutory or constitutional provisions, nor does it conflict with any rule, regulation, or program statement.[2]

---

[2]Three courts have found, however, that the BOP's interpretation of the statute "requiring proof of substance abuse within twelve months of some specific event is an impermissible interpretation of the statute." *Smith v. Vazquez*, No. CV206-275, 2007 WL 1624645, at *2 (S.D. Ga. June 5, 2007); *see also Kuna v. Daniels*, 234 F. Supp.2d 1168, 1169 (D. Or. 2002); *Mitchell v. Andrews*, 235 F. Supp.2d 1085, 1090-91 (E.D. Cal. 2001).  These courts have held that the BOP's use of such a policy is "unannounced, unwritten, and seemingly inconsistent criteria for RDAP eligibility" and thus "an unreasonable exercise of the BOP's discretion." *Smith*, 2007 WL 1624645, at *3; *Kuna*, 234 F. Supp.2d at 1169 (finding that the BOP acted arbitrarily); *Mitchell*, 235 F.
(continued...)

In addition, there was no abuse of discretion in the BOP's application of the policy to Petitioner. Petitioner does not dispute that there is no evidence of substance abuse during the twelve-month period before his incarceration. In light of the definition of remission in the DSM-IV, which excludes those periods during which the individual is in a "controlled environment," it is not arbitrary and capricious for the BOP to exclude such periods from consideration in its initial determination of eligibility. Moreover, the BOP does not appear to be applying its criteria inflexibly. As both the Program Statement and Declaration of Dr. Yañez indicate, Petitioner's participation in the non-residential program will provide an opportunity for further assessment of Petitioner's treatment needs and may lead to a treatment plan that includes the residential program.

## RECOMMENDATION

It is recommended that the Petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 be denied.

## NOTICE OF RIGHT TO OBJECT

Petitioner is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. §636. Any objections should be filed with the Clerk of this Court by February  18th , 2009. Petitioner is further advised that failure to file a timely objection to

---

[2](...continued)
Supp.2d at 1090-91 (noting, however, that the petitioner did have documentation for his abuse up to and including the twelve-month period prior to incarceration).

this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __29th__ day of January, 2009.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE